**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Case No. <u>1:14-cv-00128-BAH</u> |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE subscriber assigned IP address | ) | |
| 68.55.54.244, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH SUBPOENA TO COMCAST CABLE [CM/ECF 9]

### I.   INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's motion to quash because all of Defendant's arguments lack merit.  Courts in this District have routinely held that Plaintiff's need to receive the subpoenaed information to proceed with its case outweighs any privacy interest Defendant may have.  Further, this Court has held that a Defendant does not have standing to quash a subpoena based on an undue burden.  And, denying the infringement is not grounds to quash the subpoena.  If that were the case, all defendants would simply deny any knowledge and Plaintiff would be unable to enforce its copyright.  Finally, Plaintiff's Complaint does have merit.  Indeed, it has survived every motion to dismiss and motion for summary judgment it has faced and Plaintiff recently prevailed at trial in a similar case.

Federal courts have consistently permitted copyright owners to identify Doe Defendants through a Rule 45 subpoena, and two Federal Circuit Courts have held that Rule 45 subpoenas are permissible.  Here, a ruling to the contrary would catastrophically undermine the rights of copyright owners by denying them the tools necessary to identify on-line infringers.  Without the

ability to identify on-line infringers, suits cannot be brought and rights cannot be enforced. For these reasons, as more fully explained below, Plaintiff respectfully requests that the Court deny Defendant's motion, so that it may identify the John Doe Defendant.

## II.     FACTS

### A. Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business

Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch. *See* CM/ECF 3-2 at ¶3. Ms. Field was a real estate agent and Mr. Field was a photographer. *Id*. at ¶ 4. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 5. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*. Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 8.

Their vision has come to fruition. Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free. *Id.* at ¶ 15. They have worked hard and invested millions of dollars into their business in order to produce the best quality product. *Id*. at ¶ 14. For the first three years (when their site was not as popular) they did not have as many issues with piracy. *Id.* at ¶ 18. Now that their videos are highly desirable, more people steal their videos than pay for a subscription. *Id*. Malibu Media receives many complaints from its members asking why they should pay to subscribe when Malibu Media's movies are available for free

through BitTorrent.  *Id*. at ¶ 19.  Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.  *Id*. at ¶ 27.   Despite sending thousands of DMCA notices per week, the infringement continues.  *Id*. at ¶ 28.   And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.  *Id*.  Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Defendant's criticism of Plaintiff's copyright protection efforts is unjustified.  Indeed, "[m]any internet blogs commenting on [these types of cases] ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages."  *Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013).  Last June, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial.  *See Id*.   In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings.  Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a large award*.*"  *Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

    B.  <u>Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics</u>

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . .  Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works."  *Id.* (Emphasis in original).  Similarly, the Honorable Judge Hegarty of the District of Colorado has stated: "the Court has also witnessed firsthand the

Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[Defendant] has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

C.  The Infringer

Defendant's Internet was used to infringe fifteen (15) of Plaintiff's copyrighted works between January 5, 2013 and December 30, 2013.  *See* CM/ECF 1-2.  Indeed, Defendant's Internet has been used to illegally downloaded Plaintiff's movies over the course of nearly an entire year.  By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies.  *See* Complaint, at ¶¶ 11 -20.  The length of time which Plaintiff's investigator recorded Defendant infringing Plaintiff's movies demonstrates that the infringer was not a mere guest or passerby.  Indeed, it was someone with access to Defendant's Internet for a long period of time, consistently.

Here, Defendant should not be allowed to unilaterally establish the facts as he wishes the Court to view them, without Plaintiff even knowing his identity. At this stage of the litigation process, Plaintiff should be allowed to learn Defendant's identity in order to determine whether the infringement occurred by him or in his household.

## III.   THIS COURT SHOULD NOT QUASH THE SUBPOENA

"A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 *on reconsideration*, 232 F.R.D. 6 (D.D.C. 2005). "A motion to quash, or for a protective order, should generally be made by the person from whom the documents or things are requested." *Id.* "Even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." *Malibu Media, LLC v. John Does 1-21*, 12-CV-00835-REB-MEH, 2012 WL 3590902 (D. Colo. Aug. 21, 2012) (citing *Washington v. Thurgood Marshall Acad.,* 230 F.R.D. 18 (D.D.C.2005)).

### A.   Defendant Does Not Have Standing To Object to the Subpoena on the Basis of An Undue Burden

The District Court of Columbia has extensively addressed this issue and, along with courts throughout the country, held that Defendant does not have standing to move to quash the subpoena on the basis of undue burden. *See W. Coast Productions, Inc. v. Does 1-5829,* 275 F.R.D. 9, 16 (D.D.C. 2011) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought."); *Call of the Wild Movie, LLC v. Smith*, 274 F.R.D. 334, 338 (D.D.C. 2011) ("the putative defendants face no obligation to produce any information under the subpoenas issued to their respective ISPs and cannot claim any hardship, let alone undue hardship."); *Malibu Media,*

*LLC v. John Does 1–15,* No. 12–2077, 2012 WL 3089383, at *8 (E.D.Pa. July 30, 2012) (noting that a defendant seeking to quash a subpoena on an internet service provider "is not faced with an undue burden because the subpoena is directed at the internet service provider and not the [d]efendant.").

Even if Defendant did have standing to quash the subpoena on the basis of an undue burden, the information Plaintiff seeks is clearly relevant. "The information sought is thus highly relevant to the plaintiff's claims." *Raw Films, Ltd. v. John Does 1-15*, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012). The *Raw Films* court also noted that Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." *Id.* at *14. When addressing the issue of whether the infringer is the account holder of the IP address, the Court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." *Id.* Here, Plaintiff is only seeking the basic identifying information of Defendant. "[E]ven assuming *arguendo* that the subscribers' name and information is not the actual user sought, we are of the opinion that it is reasonable to believe that it will aid in finding the true identity of the infringer and, therefore, we find that it is relevant. This is especially true, as in this case, where there is no other way to identify the proper defendants and proceed with claims against them." *Malibu Media, LLC v. John Does 1-15*, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012).

Defendant relies on an opinion from the Central District of Illinois to support his theory that Plaintiff's subpoena should be quashed. *See* CM/ECF 9 at *8-9 citing *VPR Internationale v. Does 1-1017*, 2:11-cv-02068, (C. Ill. April 29, 2011). If the Court were to follow the rationale in *VPR Internationale*, copyright holders would be unable to bring actions for copyright

6

infringement on the Internet.  This holding would be contrary to the express policy of Congress.

Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by

increasing the penalties therefore.  *See Sony v. Tennenbaum*, 660 F.3d 487, 497 (1st Cir. 2011)

(citing the Congressional record and holding that non-commercial individuals commit

infringement by distributing copyrighted works online).   The Supreme Court has held file

sharing of copyrighted works is infringement.   *See Metro-Goldwyn-Mayer Studios Inc. v.*

*Grokster, Ltd*. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45

subpoenas may be used to identify online copyright infringers.   *See In re Charter*

*Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005); *Arista*

*Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010).   The Register of Copyrights testified

before Congress that entertainment companies have the right to sue for peer to peer infringement

and they should not apologize for doing so.[1]   Courts unanimously hold that Plaintiff's First

Amendment right under the Petition clause to bring a suit for infringement outweighs any First

Amendment right proffered by an alleged infringer.  *See e.g., Sony Music Entertainment, inc. v.*

*Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).   The only way to

enforce one's copyrights against online infringement is to subpoena the identity of the subscriber

whose internet was used to commit the infringement.

   B.   Plaintiff's Interest In Obtaining the Information in the Subpoena Outweighs
        Defendant's Privacy Interest

   "File-sharers … do engage in expressive activity when they interact with other users on

BitTorrent. The First Amendment interest implicated by their activity, however, is minimal given

that file-sharers' ultimate aim 'is not to communicate a thought or convey an idea' but to obtain

---

[1] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

movies and music for free." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 349 (D.D.C. 2011). Further, "courts have held that Internet subscribers do not have an expectation of privacy in their subscriber information as they already have conveyed such information to their Internet Service Providers." *Hard Drive Prods., Inc. v. Does 1-1,495*, 892 F. Supp. 2d 334, 340 (D.D.C. 2012) citing *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F. Supp. 2d 212 (D.D.C. 2010).

Based on the above, courts find that Plaintiff's need for the subpoenaed information outweighs any minimal privacy interest Defendant may have. "Upon balancing the putative defendants' First Amendment rights to anonymity and the plaintiffs' need for the identifying information, the Court finds that the plaintiffs' need overrides the putative defendants' right to use BitTorrent anonymously." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 353-54 (D.D.C. 2011). "I find no cognizable privacy interest in defendants' subscriber information—the only potential basis to quash in this case—Doe defendant # 1's motion is denied." *Patrick Collins, Inc. v. Does 1-10*, JFM 8:12-CV-00094, 2012 WL 1144980, *9 (D. Md. Apr. 4, 2012) (declining to quash a subpoena). "[T]he Court permitted Plaintiff to serve subpoenas on ISPs so that Plaintiff may identify the Doe Defendants responsible for the alleged infringement. Such identification is necessary so that Plaintiff may pursue these actions and enforce its legal rights to distribute its pornographic motion picture by obtaining a remedy against infringers". *Third Degree Films, Inc. v. Does 1-118*, 11-CV-03006-AW, 2011 WL 6837774 (D. Md. Dec. 28, 2011)

C. Denials of Infringement Are Not Grounds to Quash the Subpoena

Defendant attempts to quash the subpoena on the basis that he claims, without any evidence, that he is not the infringer. This premise has been specifically rejected by this District

Court and District Courts throughout the country.   "[T]he merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable."   *Achte/Neunte Boll Kino Beteiligungs Gmbh & Co. v. Does 1-4,577*, 736 F. Supp. 2d 212, 215 (D.D.C. 2010).   "While [Defendant] is free to present evidence to corroborate his denial of liability, and then move to dismiss the claims asserted against him, the court cannot quash a subpoena on these grounds." *Patrick Collins, Inc. v. Does 1-7*, 2012 WL 1150827, at *9 (D. Md. 2012); s*ee also Patrick Collins, Inc. v. Does 1-10*, 2012 WL 1144980, at *8 (D. Md. 2012) (same); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 250 (N.D. Ill. 2011) (denying motion to quash holding that denials of liability are premature and are not "relevant as to the validity or enforceability of a subpoena[.]")   This Court should not quash the subpoena based on Defendant's denial or allow Defendant to hide information from Plaintiff.

D.   Plaintiff Does Not Object to Defendant Proceeding Anonymously But Plaintiff Must be Able to Receive Defendant's Identity from Comcast

Plaintiff cannot litigate against an individual it does not know.   This would severely impede Plaintiff's ability to prove its case or conduct adequate discovery.   Indeed, without the subpoena response, Plaintiff would not even know whose computer it is examining, or whether Defendant is being dishonest about his defenses.   Further, Plaintiff could not take Defendant's deposition or the deposition of his neighbors or other household members.   This restriction would be unfair and put Plaintiff at a severe disadvantage.

That being said, Plaintiff does not seek to embarrass Defendant.   Plaintiff does not object to Defendant proceeding anonymously and having his information filed under seal or remaining as a John Doe.

E.  Plaintiff's Complaint Has Always Survived A Motion to Dismiss

Plaintiff's lawsuit is not frivolous and its Complaint states a valid claim.  Indeed, in every

case where Plaintiff has been challenged with a 12(b)(6) motion, the court has found Plaintiff

stated a plausible claim.  "Accepting all factual allegations in the Amended Complaints as true,

*Iqbal,* 556 at 678, the Court concludes Plaintiff has stated a claim upon which relief can be

granted under the Copyright Act."  *Malibu Media, LLC v. John Doe 1,* CIV.A. 12-2078, 2013

WL 30648 at *4 (E.D. Pa. Jan. 3, 2013). "These averments state a plausible claim of direct

infringement under the Copyright Act."  *Id*. "Having carefully reviewed the allegations in the

Complaint and the applicable authorities, the Court will deny the Motion because the Complaint

adequately states a claim for copyright infringement." *Malibu Media, LLC v. Pelizzo*, 12-22768-

CIV, 2012 WL 6680387 (S.D. Fla. Dec. 21, 2012).

> [L]ooking only at the Complaint--which is all the Court can review on a Rule
> 12(b)(6) motion--there is more than enough facts pleaded to state a claim of
> copyright infringement.  Plaintiff may not ultimately succeed, but the place to test
> that is on a Rule 56 motion, or at trial, if necessary. This is the same result the
> Court reached on the same motion with the same attorneys in the same kind of
> copyright infringement action. See *Malibu Media v. Roy*, Case No. 12-cv-617
> (W.D. Mich.)

*Malibu Media v. Pratt*, 1:12-cv-00621-RJJ (W.D. Mich. March 19, 2013).  And, Plaintiff's

Complaint has survived a motion for summary judgment.  *See Malibu Media, LLC v. Fitzpatrick*,

1:12-CV-22767, 2013 WL 5674711 (S.D. Fla. Oct. 17, 2013).

Denying Plaintiff the ability to subpoena Defendant's ISP to identify the on-line infringer

in this lawsuit would effectively deny copyright owners the ability to ascertain the identities of

the  infringers  who  illegally  download  and  distribute  their  works  through  the  Internet.

Consequently, no suits could be filed to enforce the infringement that occurs on-line.  Any such

holding would not only be contrary to the Copyright Act, it would also be directly at odds with

almost all existing decisional authority.

In short, without the ability to identify the infringers, copyright owners would have a right without a remedy. This would violate perhaps the most esteemed jurist in U.S. history, Chief Justice Marshall's, often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." *Marbury v. Madison*, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).   Chief Justice Marshall continued "[t]he government of the United States has been emphatically termed a government of laws, and not of men.  It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Id.*  The U.S. still deserves that high appellation because it still create remedies when vested rights that have been infringed. The case in front of the bar is no exception; our government has provided copyright owners with the ability to ascertain the identity of infringers through a Rule 45 subpoena.  This Court should not prevent Plaintiff from doing so because Defendant denies liability.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motion.

Dated:  March 12, 2014

Respectfully submitted,

MALIBU MEDIA, LLC.
PLAINTIFF

By:  /s/*Jon A. Hoppe*
Jon A. Hoppe, Esquire #6479
Counsel
Maddox, Hoppe, Hoofnagle &
    Hafey, L.L.C.
1401 Mercantile Lane #105
Largo, Maryland 20774
(301) 341-2580

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:   /s/*Jon A. Hoppe*